```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA,   *        Docket Number:
                                     1:23-cr-00099-LJV-JJM
                            *
                            *        Buffalo, New York
             v.             *        January 31, 2024
                            *        2:05 p.m.
                            *
SIMON GOGOLACK,                      STATUS CONFERENCE
also known as Greek,    (1)*
PETER GERACE, JR.,      (2)*
JOHN THOMAS ERMIN,
also known as Tommy O,  (3)*
MICHAEL RONEONE,
also known as Cone,     (4)*
FRANK KNIGHT,           (5)*
HOWARD HINKLE, JR.,
also known as Hard How, (6)*
CORTNIE BARBER,         (7)*
BERNARD BYRD, III,      (8)*
SCOTT BARNES,
Also known as Big Scott
Onepercenter,
Also known as
Scott J. Barnes,        (9)*
                            *
             Defendants.    *
                            *
 *  *  *  *  *  *  *  *  *  *  *  *  *  *


                 TRANSCRIPT OF FTR PROCEEDINGS
          BEFORE THE HONORABLE JEREMIAH J. McCARTHY
               UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Government:          TRINI E. ROSS,
                            UNITED STATES ATTORNEY,
                            By CASEY L. CHALBECK, ESQ.,
                               NICHOLAS COOPER, ESQ.,
                            Assistant United States Attorney,
                            Federal Centre,
                            138 Delaware Avenue,
                            Buffalo, New York  14202,
                            Appearing for the United States.
```

```
 1
          For Defendant 1:              FEDERAL PUBLIC DEFENDER'S OFFICE
 2                                       By JEFFREY T. BAGLEY, ESQ.,
                                           JOHN MORISSEY, ESQ.,
 3                                       Assistant Federal Public Defender,
                                         300 Pearl Street,
 4                                       Suite 200,
                                         Buffalo, New York   14202.
 5
          For Defendant 2:              SOEHNLEIN LAW, PLLC.,
 6                                       By ERIC M. SOEHNLEIN, ESQ.,
                                         350 Main Street,
 7                                       Suite 2100,
                                         Buffalo, New York   14202.
 8                                       And
                                         THE FOTI LAW FIRM, P.C.,
 9                                       By MARK A. FOTI, ESQ.,
                                         16 W. Main Street,
10                                       Suite 100,
                                         Rochester, New York   14614.
11
          For Defendant 3:              MUSCATO, DiMILLO & VONA, LLP,
12                                       By GEORGE V.C. MUSCATO, ESQ.,
                                         107 East Avenue,
13                                       Lockport, New York   14094.

14        For Defendant 4:              LAW OFFICES OF PAUL G. DELL,
                                         By PAUL G. DELL, ESQ.,
15                                       70 Niagara Street,
                                         Buffalo, New York   14202.
16
          For Defendant 5:              CLAIR A. MONTROY, III, ESQ.,
17                                       97 Lake Street,
                                         Hamburg, New York   14075.
18
          For Defendant 6:              FRANK M. BOGULSKI, ATTORNEY AT LAW,
19                                       By FRANK M. BOGULSKI, ESQ.,
                                         286 Delaware Avenue,
20                                       Suite B,
                                         Buffalo, New York   14202.
21
          For Defendant 7:              BRIAN J. HUTCHISON, ESQ.,
22                                       Attorney at Law,
                                         14 West Main Street,
23                                       Lockport, New York   14094.

24        For Defendant 8:              MICHAEL J. STACHOWSKI, ESQ.,
                                         2025 Clinton Street,
25                                       Buffalo, New York   14206.
```

```
 1  For Defendant 9:            DAVID B. COTTER, ESQ.,
 2                              380 Cleveland Drive,
                                Buffalo, New York  14215.
 3

 4
    The Courtroom Deputy:       ERIC T. GLYNN
 5

 6  The FTR/Court Reporter:     BONNIE S. WEBER, RPR,
                                Notary Public,
 7                              Robert H. Jackson Courthouse,
                                2 Niagara Square,
 8                              Buffalo, New York  14202,
                                Bonnie_Weber@nywd.uscourts.gov.
 9

10
               Proceedings recorded by mechanical stenography,
11                   transcript produced by computer.

12

13

14             (Proceedings commenced at 2:05 p.m.)

15

16          THE CLERK:  All rise.

17          The United States District Court for the Western

18  District of New York is now in session.  The Honorable Jeremiah

19  J. McCarthy presiding.

20          We're on the record in criminal proceeding 23-CR-99,

21  United States of America versus Simon Gogolack, et al, for a

22  status and scheduling conference.

23          Present in the courtroom are Assistant U.S. Attorneys

24  Casey Chalbeck and Nicholas Cooper.

25          Defendant Simon Gogolack with Assistant Federal Public
```

1    Defenders Jeffrey Bagley and John Morissey.

2            Attorneys Mark Foti and Eric Soehnlein for defendant

3    Peter Gerace.

4            Defendant John Ermin with Attorney George Muscato.

5            Attorney Paul Dell for defendant Michael Roncone.

6            Attorney Clair Montroy for defendant Frank Knight.

7            Defendant Howard Hinkle with Attorney Frank Bogulski.

8            Attorney Brian Hutchison for defendant Cortnie Barber.

9            Defendant Bernard Byrd with Michael Stachowski and

10   defendant Scott Barnes with Attorney David Cotter.

11           The Honorable Jeremiah J. McCarthy presiding.

12           **THE COURT:**  Good afternoon again everyone.

13           **ALL COUNSEL:**  Good afternoon, Judge.

14           **THE COURT:**  As you know, one of the issues I wanted to

15   discuss today was -- well, a scheduling order potentially.

16           But also, prior to that, the issue of whether in this

17   case, as it currently stands, any defendants are entitled to

18   appointment of learned counsel.

19           And I requested briefing from the parties on that

20   issue.  I have received a memorandum of on behalf of Mr. Gerace

21   from Mr. Foti and Mr. Soehnlein that's dated -- Docket Number

22   42.

23           A memorandum from Mr. Bogulski on behalf of

24   Mr. Hinkle, that's Docket Number 47.  And a memorandum from the

25   Government, that's Docket Number 50.

 1          I've reviewed all these and I'll hear from whoever

 2   wants to be heard.

 3          You can stay at counsel table or you can come to the

 4   podium, whichever you prefer.  So if you are going to stay

 5   there, Mr. Foti, could you be near a mic?

 6          You are going to come up?  All right.  Whatever.

 7          **MR. FOTI:**  Judge, I only stood to lead on this

 8   particular issue, because I think I filed the first memorandum,

 9   so I feel that if there is any further comment, I imagine this

10   is my opportunity to do it.

11          And I believe that we addressed the issues pretty

12   thoroughly in what we submitted, so there is not a lot I want to

13   add other than I did review the response that the Government

14   provided.

15          And I think what I want to highlight for the Court is

16   I don't believe the Government engaged in any argument or

17   discussion over the point of whether the Court has discretion to

18   do this.

19          I think that the Government has essentially argued

20   over one of the points that were raised from the brief, which

21   was whether the offense, as charged in the current indictment,

22   without special findings, is sufficient to constitute a

23   categorical definition of capital crime and --

24          **THE COURT:**  We'll get to that in a minute, but one of

25   the other arguments that the Government makes and you have not

1   responded to it, and I think because at least thus far, you

2   haven't had the opportunity to, but the argument they make is

3   that even if you are correct, that somebody's entitled to

4   appointment of learned counsel, retained attorneys are not.

5           And Mr. Gerace has you and Mr. Soehnlein, at least up

6   until this point, were designated as retained attorneys.

7           So even if I had the discretion to appoint learned

8   counsel, could I do it for Mr. Gerace.

9           **MR. FOTI:**  Judge, I guess there is two points I have

10  to respond to that particular issue.

11          And the first is simply we didn't brief it, because it

12  wasn't what was discussed.  At the initial arraignment, the

13  Court asked us to write on this issue of whether learned counsel

14  is appropriately appointed at this point.

15          And I imagine that that consideration is partially

16  before the Court, because there is a number of defendants who

17  have already been determined to be qualify for appointed

18  counsel.

19          **THE COURT:**  Well, this, as currently, you know, the

20  briefing on this request focuses on four defendants who are

21  subject to accounts two and three of the second superseding

22  indictment, Mr. Gerace, Mr. Ermin, Mr. Hinkle and Mr. Gogolack.

23          And three of those -- let's see, Mr. Gerace and -- you

24  know, I'll hear argument on it, but has retained counsel.

25  Mr. Ermin has retained counsel and Mr. Hinkle has retained

1    counsel and Mr. Gogolack has appointed counsel.

2            **MR. BOGULSKI:**  Judge, I was appointed by Mr. Hinkle.

3            **THE COURT:**  I'm sorry?

4            **MR. BOGULSKI:**  I was appointed.

5            **THE COURT:**  You were appointed?  Okay.  That is my

6    mistake.

7            **MR. BOGULSKI:**  I'm sorry to interrupt.

8            **THE COURT:**  I'm sorry?

9            **MR. BOGULSKI:**  I just wanted to let you know.

10           **THE COURT:**  Okay.  I had you listed as -- I thought

11   the docket said that you were retained.  But in any event, I'll

12   take you at your word.

13           **MR. FOTI:**  Judge, I think for that reason and others,

14   it makes sense that we're resolving the issue of whether learned

15   counsel should be available upon determinations of financial

16   eligibility.

17           But the determination of financial eligibility is not

18   so restrictive as to the fact that retained counsel is unable to

19   have learned counsel appointed.

20           That's not the history in this District.  That's not

21   the case nationally.  The Government is wrong on that, we just

22   haven't briefed it.

23           But the Government knows that they prosecuted cases in

24   this courthouse, such as U.S. versus Martinez, where retained

25   counsel was maintained by the defendant, as learned counsel was

1    appointed.

2          And that's not the only instance of it.  Ultimately,

3    the Court, in its discretion, given the allegations that are set

4    forth, is in a position to protect the rights of the defendant

5    and learned counsel.  And capital resources require a financial

6    obligation that far exceeds that of retaining counsel in a --

7          **THE COURT:**  Well, yeah.  I guess it will -- we will

8    cross that bridge when we come to it or if we come to it.

9          **MR. FOTI:**  Right.

10          **THE COURT:**  And it would seem to me, even though it

11    hasn't been briefed, and I may want some further submissions on

12    this, but somebody may be financially eligible to retain one

13    attorney and yet not financially eligible to retain two

14    attorneys.

15          In Mr. Gerace's case, he's retained you and

16    Mr. Soehnlein, so I have a little question as to that, but --

17          **MR. FOTI:**  Well, he retained us in the other case and

18    I imagine that before we get into scheduling orders, we're going

19    to talk about that.

20          **THE COURT:**  Right.

21          **MR. FOTI:**  I didn't want to have that issue sort of

22    pulled into argument over the learned counsel, but --

23          **THE COURT:**  Okay.  All right.  Well, let's go back to

24    the main issue then, which is whether -- you know, whether in

25    the abstract, I guess, where a capital crime has not yet been

 1   charged, it's the Government's position is there nevertheless

 2   discretion to appoint learned counsel.

 3         I've reviewed your brief.  I've reviewed their brief

 4   and I'll hear from them, but it does seem to me that both given

 5   the history in this case and given what is said in the -- in the

 6   justice manual about capital crime proceedings, namely something

 7   that somebody either is charged or could be charged with an

 8   offense subject to the death penalty, you -- it seems to me, you

 9   have the better of the argument on that point, but I'll also

10   hear from the Government on that.

11         **MR. FOTI:**  Well, Judge, if it seems that way to you,

12   right now, then I think brevity might be the most persuasive way

13   of going forward.

14         I think that --

15         **THE COURT:**  In other words, don't say something that

16   is going to sink yourself?

17         **MR. FOTI:**  Don't talk you out of the inclination that

18   you already have at this point.

19         **THE COURT:**  Okay.  All right.

20         **MR. FOTI:**  Which I've been known to do at times.  I

21   think that there is a clear history demonstrated in the cases in

22   this District.

23         There is reference to -- as the Court pointed out, to

24   the judicial conference.  There is reference to the Western

25   District of New York CJA plan.

1      There was national cases cited an abundance of them.

2  I think all of the authority lends towards a persuasive argument

3  that the Court should exercise its discretion to appoint learned

4  counsel, where a defendant is eligible for it.

5      And, obviously, in terms of issues of financial

6  eligibility and who is capable of being retained at this point,

7  I do think that, obviously, we have to address that as a

8  secondary issue.

9      But I -- I -- we're going to have all kinds of other

10  things that we need to discuss in that regard, so on this issue,

11  I have nothing further at this time.

12      **THE COURT:**  Okay.  Before I hear from the Government,

13  Mr. Bogulski, you filed a brief on the subject as well.

14      Is there anything you wish to say in addition to what

15  Mr. Foti has already said?

16      **MR. BOGULSKI:**  Thank you, Judge.  The only thing that

17  I would add is in my papers, I talked about the addition of a

18  second attorney that I thought would be valuable, just because

19  of the complexity of this case.

20      It's complicated for the Government.  It's complicated

21  for our clients.  It's complicated for us.  And now that this is

22  a -- a new wrinkle to it, but I'll take whatever help I could

23  get.

24      Whether it's a second lawyer or learned counsel, just

25  because of the sheer importance of the case and what's at stake

 1   here, given the possibility of death penalty.

 2          We don't know -- I think the Court is right to error

 3   on the side of caution in an appointment.  I don't even know if

 4   it's caution, but follow the procedures.

 5          I know and I wrote about it from memory from the 10th

 6   Street Gang case that I had, and I know that lawyers were

 7   sent -- my understanding was for training on that case.

 8          And no one ultimately did receive the death penalty on

 9   that case, but I think it would be helpful to have learned

10   counsel or a second lawyer on this case to help -- help me out.

11          Help any lawyer out, just because of the complexity of

12   the legal issues and all.  It's a tangled web, when you think

13   about it, how far out the allegations are relative to this

14   conspiracy.

15          Just investigating the case alone would warrant

16   additional resources to ensure that my client and all the

17   defendants are assured due process, appropriate investigation.

18          And I argued in my papers that it would protect the

19   Government as well, in case anyone down the road.

20          Say, there is a trial, and people get convicted,

21   someone could potentially argue that it was ineffective

22   assistance of counsel, which is a much weaker argument, I think,

23   when two lawyers are there.

24          So it would help the Government, too.  So that's

25   really all I had to say.

 1          If you have any other questions, I'd be happy to --

 2          **THE COURT:**  Okay.  Thank you.

 3          **MR. BOGULSKI:**  Thank you, Judge.

 4          **THE COURT:**  Ms. Chalbeck or Mr. Cooper.

 5          **MS. CHALBECK:**  Thanks, Your Honor, I just want to

 6     address the -- I guess, the issue of discretion and the Court's

 7     discretion.

 8          **THE COURT:**  Right.

 9          **MS. CHALBECK:**  Consistent with the CJA statutes,

10     Section 3005, as well as Section 3559 of the US Code -- Title

11     18, US Code, that the Court does have discretion.

12          The Government acknowledges as much in footnote one of

13     the memorandum and because CJA appointments are --

14          **THE COURT:**  Wait a second.  Because I must have --

15     well, you in that footnote says:  Appointment of counsel is

16     exclusively within the -- okay.  All right.

17          You do say has discretion as to whether to assign

18     additional or learned counsel.  I missed that, so I'm glad you

19     pointed that out to me.

20          **MS. CHALBECK:**  Absolutely, Your Honor.  But just to

21     kind of tailor my comments and to contextualize that footnote,

22     we just want to make it clear.

23          It's the Government's belief that that discretion

24     extends from the CJA statutes themselves.  It doesn't

25     necessarily afford the -- a defendant, who is not indigent or

 1   financially eligible -- to quote the Supreme Court, an

 2   entitlement -- a statutory entitlement to the appointment of

 3   learned counsel.

 4        And I think Mr. Foti did a nice job at presenting and

 5   the Court as well, presenting the differences between the

 6   Government's view and the defense's view as to that matter with

 7   respect to financial appointment.

 8        We would note that some of the defendants, Mr. Gerace

 9   included, have filled out affidavits before and it's reflected

10   on their bail reports that they have assets.  Mr. Gerace has

11   considerable assets and income, at least as reflected of the

12   last bail report.

13        And we, of course, don't interfere with financial

14   affidavits that defendants make to the Court.  It's just our

15   position that the statute is narrow in the sense that it extends

16   the appointment of counsel as an entitlement only to those

17   financially indigent defendants.

18        It's further our understanding, based on the

19   conclusion in Mr. Gerace's memorandum that he filed, that he was

20   seeking the appointment of counsel.

21        He says:  That the defendants, that includes him, are

22   statutorily entitled to the appointment of learned counsel and

23   so insofar as this particular issue has not been briefed, we

24   would welcome additional opportunities to brief it, if that is

25   what Mr. Gerace and other similarly situated defendants would

1    like.

2          **THE COURT:**  Okay.  So correct me if I'm wrong, but

3    the -- currently the -- the issue at hand applies to four

4    defendants.  Not to all defendants.

5          And it applies to the defendants that are charged in

6    counts two or three and that's Mr. Gerace, Mr. Ermin and

7    Mr. Hinkle and Mr. Gogolack.

8          Nobody else, correct?

9          **MR. COOPER:**  That's correct, Judge.

10         **THE COURT:**  All right.  And, also, in light of what

11   Ms. Chalbeck has just said, how do you think we should proceed?

12         Anybody?

13         Mr. Foti -- I mean, I still -- you know, financial

14   affidavits may have been filed in the past, but I would want

15   them to be updated, so I can assess whether -- whether or for

16   whom I should appoint counsel.

17         I think there as an exercise of discretion.  These

18   four individuals have a -- have a pretty compelling case for

19   appointment of learned counsel.

20         But for example, with respect to Mr. Gerace, you're a

21   very competent attorney.  Mr. Soehnlein is a very competent

22   attorney.

23         And neither of you fit the definition of learned

24   counsel, though; is that correct?

25         **MR. FOTI:**  That's correct.

 1          **THE COURT:**  So --

 2          **MR. FOTI:**  We're significantly short of experience to

 3    qualify for learned counsel.

 4          **THE COURT:**  You'll get there some day, I'm sure.

 5          **MR. FOTI:**  Maybe -- yeah.

 6          **THE COURT:**  But -- but -- but, I mean, if I'm going to

 7    appoint learned counsel, should I do that on top of the two of

 8    you continuing in the case?

 9          **MR. FOTI:**  Judge, I -- my co-counsel and I have

10    discussed that and we discussed it in terms of two things.

11          And one is -- I don't want to get too far ahead, but

12    we have some concerns about local rule 44 and our ability to

13    indicate that we're fully retained in regard to this case.

14          And we're also concerned about whether we will remain

15    fully retained, if we have to use funds that have been allocated

16    to our retainer in the other case here, to initiate our

17    representation.

18          So there is all kinds of issues in terms of our

19    ability to proceed as retained counsel that exist that we've

20    tried to work through and we don't have a solution to at this

21    point.

22          **THE COURT:**  Yeah.  I know you did raise that at the

23    outset.

24          **MR. FOTI:**  And I know we were supposed to report back

25    on that today.

1          And part of the report I can give you is Mr. Gerace

2    liquidated significant assets in order to retain us on the other

3    case.

4          And if we were to -- including selling his home and

5    that was something that was -- that he was required to do in

6    order to put on a defense of a Federal case that was pending

7    against him.

8          Now, there is this new case, and we don't have the

9    same assets available to retain us.  Especially, at the outset,

10   where there is a significant amount of legal work ahead.

11         The issue here is we are fully retained on this other

12   case, and there are issues regarding counsel that we're still

13   working through, but at least as of right now, we remain fully

14   retained on that case.

15         If we are to become retained on this case, we would

16   not be able to represent that we're fully retained and we would

17   really no longer be fully retained on the other case.

18         **THE COURT:**  Okay.  I'm -- you know, I'm generally

19   familiar with the other case, only by what I read, basically.

20         I'm not intimately familiar with it.  It's not

21   assigned to me, but do -- do I understand correctly, that there

22   is no potential death penalty ramifications in that case?

23         **MR. FOTI:**  There is none.

24         **THE COURT:**  Okay.  Okay.

25         Anybody else?

1          **MS. CHALBECK:**  No.

2          **MR. COOPER:**  No, thank you, Judge.

3          **MR. FOTI:**  Judge, I never really answered your

4     question, which is the discussions we've had since the last

5     Court appearance between myself and co-counsel is we have to do

6     what's right for our client, Mr. Gerace.

7          **THE COURT:**  I understand.

8          **MR. FOTI:**  We would leave that to the discretion of

9     the Court whether we -- there is some sort of conditional

10    appointment, as was done for Mr. Gerace's co-defendant in the

11    other case, Joseph Bongiovanni.

12          And whether that includes both myself and co-counsel

13    and the addition of learned counsel, for the time being or

14    whether just one of us is -- are appointed in addition to

15    learned counsel.

16          The important thing -- and we are in agreement on this

17    is -- is that learned counsel should be involved based on the

18    posture the case is in right now.

19          And if that means that I have to step off,

20    Mr. Soehnlein will -- will join in learned counsel to move

21    forward.  I respect that decision.

22          And, likewise, he is of the same position.  If the

23    Court were to decide to keep me on for continuity of counsel.

24          **THE COURT:**  So, Mr. Soehnlein, you're nodding, but can

25    I take that to mean you're in agreement?

 1              That whatever I decide, whether you both stay, plus

 2      learned counsel or whether one of you has to step off, you both

 3      can live with that, right?

 4              **MR. SOEHNLEIN:**  That's correct, Your Honor.  We have

 5      to do right by Mr. Gerace.  And we're both committed to that,

 6      whatever that means for either of us.

 7              **THE COURT:**  Okay.  Well, obviously, you know, based on

 8      what I'm hearing today, even though I originally thought that we

 9      could implement a scheduling order today, I think it's much too

10      early for that.

11              Because I think I'm leaning toward appointment of

12      learned counsel for these four individuals, but I want some

13      further submissions -- detailed submissions concerning their

14      financial status, okay?

15              You're looking puzzled.

16              **MR. FOTI:**  Judge, no.  No.  I'm not puzzled.  But on

17      that issue, this is another area where I believe the Court has

18      discretion.

19              But I think the preference is -- and it would be

20      consistent with the Government's position that wants the Court

21      to review financial eligibility, but it doesn't intend -- my

22      understanding is they have just indicated they don't intend to

23      be involved in that process.

24              **THE COURT:**  Yeah.

25              **MR. FOTI:**  We would want to make those submissions ex

1  parte, and subject to the Court's review, that's fine.

2          But the determination -- determinations regarding

3  financial eligibility I don't believe should bleed into what

4  could become a discovery mechanism for the Government, if they

5  wanted to insert themselves in that process.

6          **THE COURT:**  Yeah.

7          **MR. COOPER:**  Judge, I think that's a bit of an

8  overstep on what we were representing.

9          Ms. Chalbeck said that the Government didn't intend to

10  interfere with the Court's process of reviewing financial

11  affidavits.

12          Meaning the defendant fills it out and the Court

13  reviews it.  Generally the Government doesn't have a role in

14  that process.

15          I don't consent to the financial affidavits being

16  submitted ex parte.  In fact, to the contrary.

17          I think the Government should see them, because the

18  Government certainly has information with respect to numerous

19  defendants in this case that maybe could call into question

20  information that's reported in a financial affidavit and we

21  would have a right to respond to that information.

22          **MR. FOTI:**  Judge, I don't think they do have a right

23  to respond.  That's within the Court's discretion in terms of

24  issues of financial eligibility.

25          If there is information regarding the defendants'

1    financial circumstances the Government wants to share, so that

2    we make sure anything that we submit to the Court is correct, we

3    can do that.

4           But in terms of this process, it's for the appointment

5    of counsel and so that we can move forward.

6           And that's a determination where, Judge, you act as

7    the gatekeeper.  The Government is not supposed to be the

8    gatekeeper of this process.

9           **THE COURT:**  No.  And I -- well, that's true.  That's

10   true in a lot of cases, which are usually less involved than

11   this case.

12          You know, you've been there.  We've all been there.

13   I'll question the defendant right there at the initial

14   appearance and the Government is sitting there and there is

15   no -- there is no problem one way or the other.

16          This case may be a little different -- well, what

17   we'll -- what I want to do -- initially, you can make the

18   submissions under seal or ex parte to me.

19          The Government can argue why it should have access to

20   them and I'll decide whether it should.

21          But in addition to that, assuming that some learned

22   counsel are going to be appointed, I think you can all predict

23   it's going to be a tall task to get -- I see Ms. Mariano sitting

24   in the background there.

25          I'm not asking you to speak you can nod if you want,

1    but getting learned counsel for these folks, with the various

2    conflicts that are out there, is going to take some doing.

3           Anybody disagree with that?

4           **MR. BOGULSKI:**  No, Judge.

5           **THE COURT:**  Because there aren't a whole lot of

6    learned counsel floating around, so what --

7           **MR. BOGULSKI:**  What I was going to say on behalf of

8    Mr. Hinkle, I am -- or Mr. Hinkle is in a different position.

9    He was already appointed counsel.

10          **THE COURT:**  Right.

11          **MR. BOGULSKI:**  And Magistrate Judge Roemer had

12   appointed -- appointed me and he was qualified with the

13   financial affidavit back then.

14          My request --

15          **THE COURT:**  Well, I think as to -- yeah.  As to your

16   client, Mr. Hinkle and Mr. Gogolack and the -- they have both

17   already been qualified, so I don't need detailed submissions

18   from them.

19          **MR. BOGULSKI:**  Sure.

20          **THE COURT:**  Primarily, Mr. Gerace and also Mr. Ermin.

21          **MR. BOGULSKI:**  And, Judge, I would be happy -- and I

22   spoke to my client briefly -- would be happy with just a second

23   lawyer.

24          Doesn't have to be learned counsel.  I mean --

25          **THE COURT:**  That's great, but the whole point of this

 1   is that if there are potentially --

 2        **MR. BOGULSKI:**  Sure.

 3        **THE COURT:**  -- death penalty eligible offenses, even

 4   though they haven't been charged right now, I think it makes

 5   sense sooner rather than later to get learned counsel --

 6        **MR. BOGULSKI:**  Sure.

 7        **THE COURT:**  -- into the -- into the picture.

 8        So I said I wasn't going to ask Ms. Mariano to say

 9   anything, but because your office is involved in that process,

10   are you able to guesstimate for me how long it would take to get

11   folks lined up?

12        **MS. MARIANO:**  I would need a conflict list.

13        **THE COURT:**  You want to come up and just speak into

14   a --

15        **MS. MARIANO:**  Your Honor, if the Government could just

16   provide the most current conflict list directly to me -- I'm

17   sure they have done it through our panel administrator, but if

18   the most up-to-date conflict list could come to me?

19        I don't believe we're going to have any local

20   attorneys who qualify as learned counsel.  There are only a

21   handful and I'm fairly certain they are all conflicted in this

22   case.

23        So I will have to reach out nationally and identify

24   four learned counsel, who are willing to serve in this case.

25        I can identify more than four and make those

1    recommendations to the Court, so you have a selection or I can

2    recommend four.  And if you choose to not use all four, I can

3    recommend others.

4          So the Court ultimately makes the decision on who to

5    appoint.  In the past, I've normally just provided the exact

6    amount of folks the Court needs.

7          Especially, when they are from out of town, I can

8    provide the CV to Your Honor as well, for each of those

9    individuals.

10         **THE COURT:**  Okay.  Yeah.  Why don't you do that and

11   then we'll -- so on the -- clearly, as to then Mr. Hinkle and

12   Mr. Gogolack, we're going to need those.

13         And Mr. Ermin and Mr. Gerace, again, get me updated

14   financials -- detailed financials and then I will decide.

15         I'm leaning toward, you know, appointing for them as

16   well, but I think in -- particularly, Mr. Gerace's case, one of

17   the things I'm going to wrestle with is Mr. Foti and

18   Mr. Soehnlein can both stay on or whether one has to step off,

19   okay?

20         Yes?

21         **MR. MUSCATO:**  Your Honor, on behalf of Mr. Ermin, I

22   just wanted to remind the Court that the last appearance you

23   were kind enough to allow me to --

24         **(Inaudible)**

25         -- I haven't indicated to the Court yet that I've been

1    fully retained.

2          **THE COURT:**  Okay.

3          **MR. MUSCATO:**  I believe that's going to happen, Your

4    Honor.  But I frankly, need about another week to ten days to be

5    able to give you a definite answer on it.

6          **THE COURT:**  Okay.  Okay.  No.  That's fair.

7          But in the meanwhile, also, even aside from that, I'm

8    going to want financials, okay?

9          **MR. MUSCATO:**  Yes, sir.

10         **THE COURT:**  Ex parte at first and we'll see where we

11   go from there.

12         **MR. MUSCATO:**  Thank you, Your Honor.

13         **THE COURT:**  I mean, I understand it's probably a

14   little frustrating, particularly for those defendants who are

15   not the subject of all this discussion, who may want to get

16   things moving.

17         But I really can't talk about a scheduling order for

18   some defendants unless I talk globally, so we're just going to

19   have to wait on that.

20         So let's just set a timetable for the next steps and

21   then we'll -- excuse me -- we'll see where we go from there.

22         I'd like those submissions -- the financial

23   submissions -- have those within ten days.

24         **MR. FOTI:**  Yes, Judge.

25         **THE COURT:**  Counsel, ten days for the financial

 1    submission?

 2             **MR. MUSCATO:**  Yes, Your Honor.

 3             **THE COURT:**  And I want those detailed, okay?

 4             All right.

 5             **MS. CHALBECK:**  Your Honor, I'm --

 6             **THE COURT:**  Yeah.

 7             **MS. CHALBECK:**  I'm sorry to interrupt.  I think I

 8    might just be a little confused.  I thought I heard --

 9             **THE COURT:**  You wouldn't be the only one,

10    Ms. Chalbeck.

11             **MS. CHALBECK:**  Okay.  I thought that I had heard

12    Mr. Foti earlier state that he was not in agreement with the

13    Government's position that only financially eligible defendants

14    were statutorily entitled -- to the extent that there could be a

15    statutory right and to the extent that the Court has just

16    general discretion to appoint counsel.

17             And so I had thought that I had heard an indication

18    from him that he would want to brief that legal issue first.

19             **THE COURT:**  You mean entitlement versus discretion?  I

20    mean, you agree that I have discretion, right?

21             **MS. CHALBECK:**  Right.  But to the extent that his

22    client might not be financially indigent, then I thought my

23    understanding was that the argument was that it didn't matter.

24             And that the Government was -- I think the exact quote

25    was:  Wrong on that -- on that issue as a matter of law.

1          So trying to think ahead of potential issues, I'm

2   wondering, does -- does that legal issue need to be resolved

3   prior to his submission of a financial affidavit?

4          **MR. FOTI:**  Judge, if I can clarify?

5          **THE COURT:**  Yeah.

6          **MR. FOTI:**  I -- I don't disagree that financial

7   eligibility needs to be determined by the Court, so I don't

8   think we need to brief that.

9          What I disagree with is the blanket statement if

10  somebody has retained counsel, that they per se become

11  financially ineligible.

12         That's not the case.  And you can look at 18 US Code

13  3006, where it specifically says defendants are entitled to

14  services, even if circumstances where they are retained.

15         It's -- and that's also laid out in other areas of the

16  source material that we referenced throughout our memo.

17         The issue of financial eligibility is separate from

18  whether somebody was capable of retaining counsel at some point,

19  even especially in a separate case and even in the case where

20  the issue is now before the Court.

21         So I don't think we need to brief an issue of whether

22  learned counsel should be appointed irrespective of financial

23  eligibility.

24         I'm totality fine with moving forward with what the

25  Court has suggested, which is in ten days we submit ex parte

1  financial submissions and the Court makes a determination of how

2  to proceed from there.

3          **THE COURT:**  Yeah.  Okay.  I mean, again -- and I know

4  nothing about his finances, but depending on what they are, that

5  might influence my discretion.

6          **MR. FOTI:**  Understood.

7          **THE COURT:**  So --

8          **MS. CHALBECK:**  The -- Your Honor, that's fine with the

9  Government.

10          And I would just note that I think the Court should

11  refer to Section 3599 and not Section 3006.  The former

12  displaced the latter and the Supreme Court discusses that in

13  Martel.

14          **THE COURT:**  All right.  Well, okay.  I will.

15          **MR. COOPER:**  Judge, one more issue before we move on

16  from it.

17          **THE COURT:**  Right.

18          **MR. COOPER:**  Ex parte submissions are generally

19  disfavored.  There hasn't been a basis submitted.

20          Mr. Foti uttered a sentence that he prefer the

21  Government not use a financial affidavit as a discovery tool.

22          I don't think there is much substance behind that

23  sentence at all.  And the Court kind of went along with that,

24  that they can be submitted ex parte.

25          It's never been my experience --

1      **THE COURT:**  No.  What I said was they should be

2  submitted initially ex parte and then you can argue why they

3  shouldn't be.

4      That's what I said.

5      **MR. COOPER:**  But, generally, the law is that ex parte

6  submissions are strongly disfavored.

7      And here, we're essentially applying that as the

8  starting point.  It doesn't -- at least to me, it doesn't make

9  sense to apply something that's strongly disfavored as the

10  starting point, when there has been no basis made, other than

11  the sentence that the Government would use it as a discovery

12  tool.

13      **THE COURT:**  Mr. Cooper, I'm having a lot of issues

14  thrown at me at once and I'm trying to sort through them in a

15  logical sequence.

16      And so I'm not foreclosing you from having access to

17  the statements.  I'm just saying, initially, they will be

18  submitted to me ex parte.

19      You can argue why they should not be and I'll consider

20  whether you have access to them, okay?

21      **MR. COOPER:**  Understood, Your Honor.

22      **MS. CHALBECK:**  Thank you, Your Honor.

23      **THE COURT:**  Ms. Chalbeck, you -- just to going back to

24  what you last said about the Supreme Court decision and the two

25  sections, give me that again, because I want to look at that

1    again.

2          **MS. CHALBECK:**  Yes, Your Honor.  I believe it's on --

3          **THE COURT:**  Is it -- is it in your -- is it in your

4    brief?

5          **MS. CHALBECK:**  It is, Your Honor.  I think it's on

6    pages seven and eight of the brief.

7          But there is a Supreme Court case, Martel -- I think

8    it's versus Clair, that explains that Congress used Section 3599

9    of Title 18 to displace Section 3006.

10         And so insofar as the Court has -- you know,

11   considering, I guess, a statutory analysis, based on Martel, it

12   would seem to the Government that the logical starting point is

13   3599 and not 3006.

14         **THE COURT:**  Okay.

15         **MS. CHALBECK:**  I only say that because the defense had

16   urged starting with 3006 and --

17         **THE COURT:**  Okay.  I see.  At page nine of your brief,

18   you discuss Martel and 35, so I'll take a look at that.

19         **MS. CHALBECK:**  Thank you, Your Honor.

20         **THE COURT:**  All right.  So in terms of the Speedy

21   Trial Act, when should we next reconvene?

22         **MR. BAGLEY:**  Judge, with respect to -- overhear,

23   Judge.

24         **THE COURT:**  Okay.

25         **MR. BAGLEY:**  So for Mr. Gogolack, with respect to the

1   scheduling order, Judge, I would request that we at least set a

2   discovery deadline.

3        At this point the case is approximately a month old --

4   a little less than a month.  Mr. Gogolack has been on the

5   complaint since August.  We don't have basic discovery in the

6   case.

7        I know the Government has made several representations

8   at various detention hearings about discovery that they have,

9   but we're in a position where we're unable to evaluate any of

10  that because we don't have it, Judge.

11       So I'd ask that you set a discovery deadline before

12  you set any other scheduling order and we can come back at a

13  status conference at some point in the future and set motions

14  deadlines, but I would ask for a discovery deadline first.

15       **MR. COOPER:**  Judge, first of all, Mr. Gogolack hasn't

16  been on a complaint since August.  He was indicted in September,

17  so he hasn't been pending on a complaint for five months or four

18  months.

19       And it's -- that's when he was first charged by

20  complaint, but he was indicted weeks later.

21       There has been a significant amount of discovery

22  provided to Mr. Gogolack, because he was indicted and a

23  scheduling order was in place.

24       I'd ask that we set a scheduling order in its

25  entirety, so that we know when motions are going to be filed.

1   So if we're doing it today, that's great.  I'm ready to do it

2   today.

3           **THE COURT:**  No.  We're not doing that today.

4           **MR. COOPER:**  Okay.

5           **THE COURT:**  I mean, that just would make no sense.

6   Because if I get learned counsel in, they are going to want to

7   be heard, but by the same tone, I'm also not going to set

8   piecemeal deadlines.

9           **MR. STACHOWSKI:**  Yeah, Judge.  I've gotten some

10  discovery, but what I'm missing is the causal link.

11          There is -- one of my charges is sale of a fentanyl

12  with a death and I'm looking for the causal connection.

13          **MR. COOPER:**  Judge, that's not accurate.  He's charged

14  in a narcotics conspiracy only.

15          **THE COURT:**  Yeah.

16          **MR. STACHOWSKI:**  The death isn't in there?  Good.

17          **THE COURT:**  Yeah.  Counsel, I'm not going to get into

18  who gets what.  When we're going to do it globally, I want to do

19  it as quickly as possible, but I want to also --

20          **MR. STACHOWSKI:**  Good.

21          **THE COURT:**  -- make sure that we have the whole team

22  on board, whoever that's going to be.

23          So you get -- if you can, Mr. Cooper and Ms. Chalbeck,

24  if you can get a conflict list -- a current conflict list to

25  Ms. Mariano -- where did she go?

1          There you are, Ms. Mariano, so we can start working on

2     that process.

3          **MS. CHALBECK:**  Absolutely, Your Honor.

4          **THE COURT:**  Okay.  And so -- again, back to my basic

5     question, when should we reconvene?

6          I want to keep this moving forward, but I want to give

7     people enough time too, so I think I said financial -- detailed

8     financial affidavits within ten days, correct?

9          **MR. COOPER:**  Correct, Judge.

10         **MR. FOTI:**  Yes.

11         **THE COURT:**  If you and Mr. Cooper or Ms. Chalbeck, if

12    you want to submit within the same time frame, an argument to me

13    as to why you should have access to those, you can do that and

14    then I'll consider it, okay?

15         **MR. COOPER:**  Thank you, Judge.

16         **THE COURT:**  And then I'll decide who is going to get

17    what in terms of further appointments.

18         Clearly -- I think clearly with respect to those two

19    defendants, who are also already qualified for appointment of

20    counsel, Mr. Hinkle and Mr. Gogolack, they are going to get

21    learned counsel.  I just don't know when and we'll take it from

22    there.

23         So let's have another status conference -- let's see,

24    today is January 31st.  How about February -- can we do

25    February 21st?

1          No.  Wait a second.  That's not a good day.  I have --

2   did somebody make a suggestion?

3          **MR. BOGULSKI:**  Judge, would it be possible to do the

4   22nd?  I'm in a trial for three weeks, but it's a down day for

5   me, the 22nd I could be available.

6          **MR. COOPER:**  Judge, I would actually -- not to pile on

7   with Mr. Bogulski, but Ms. Chalbeck and I both start trial

8   February 12th and I expect Fridays are going to be down days for

9   Judge Vilardo.

10          And all three prosecutors that are on this case are

11   going to be on that trial.  So in order to make any progress, we

12   would need to be here, so could we schedule for a Friday?

13          **THE COURT:**  And you're on trial that day,

14   Mr. Bogulski?

15          **MR. BOGULSKI:**  I'm scheduled to be, but maybe someone

16   could stand in.  It's simply for the appointment of counsel.

17          **THE COURT:**  Yeah.  Okay.

18          **MR. BOGULSKI:**  Right.  I mean, I think the Court's

19   already decided.

20          **THE COURT:**  All right.  I'm sorry?

21          **MR. BOGULSKI:**  I'm sorry.

22          **THE COURT:**  Yes, yes.  I have.  All right.  Then how

23   about Friday, the 23rd, at 11 o'clock?

24          **MR. COOPER:**  That works for the Government.

25          **THE COURT:**  Does that work for everybody?

1          **MR. FOTI:**  Yes, Judge.

2          **THE COURT:**  Can we agree that based on continuity of

3    counsel reasons, plus any other reasons that anybody wants to

4    raise, that on that basis, time is excluded between today and

5    February 23rd, from the Speedy Trial Act calendar?

6          **MR. COOPER:**  Yes, Judge.

7          **MR. STACHOWSKI:**  Yes.

8          **MR. COOPER:**  And I would add -- I think under

9    (h)(1)(D), that technically --

10         **MR. BAGLEY:**  We --

11         **MR. COOPER:**  -- the motions are still pending for

12   appointment of learned counsel, so --

13         **THE COURT:**  Right.

14         **MR. COOPER:**  And it's excluded to (h)(1)(D) as a

15   matter of law.

16         **THE COURT:**  Okay.  Anybody disagree?

17         Okay.  Anything else I need to address today on this

18   case?

19         All right.  Thank you, all.

20         **MR. COOPER:**  Thank you, Judge.

21         **MR. FOTI:**  Thank you, Judge.

22         **MS. MARIANO:**  Actually, Your Honor --

23         **THE COURT:**  What?

24         **MS. MARIANO:**  Sorry.  For appointed counsel on this

25   case whether it's one of the four defendants or not?

1          **THE COURT:**  You want this on the record?

2          **MS. MARIANO:**  Yeah.  Just -- to appointed counsel,

3     just to remind them, there is a Circuit case budget attorney for

4     mega cases that they can consult with.

5          And if they would like to reach out to my office, I

6     can help facilitate that.

7          **THE COURT:**  Okay.

8          **MS. MARIANO:**  It doesn't have to be one of the four.

9          **THE COURT:**  Okay.  All right.

10         Thank you, all.

11         **UNIDENTIFIED SPEAKER:**  Judge, I have one more thing,

12    too, is that for all of the defendants, even though it's for

13    learned counsel, you want all the other unidentified?

14         **THE COURT:**  No.  I mean all.

15         **MR. FOTI:**  No.  That's for everybody.

16         **THE COURT:**  You are welcome -- I -- I don't even -- I

17    don't know whether -- if all learned counsel are in place by

18    then, then I think it would be appropriate to set a scheduling

19    order at that point, but I don't know whether that's going to be

20    feasible or not.

21         **UNIDENTIFIED SPEAKER:**  Is that even feasible in a

22    short period of time?  Ten days is --

23         **THE COURT:**  I'm sorry?

24         **UNIDENTIFIED SPEAKER:**  Ten days is February 10.

25         **THE COURT:**  No.  The date I set was February 23rd.

1      **UNIDENTIFIED SPEAKER:**  That I understand, but ten days

2  for them to submit their financial affidavits, so they have up

3  until the 10th or 11th to submit?

4      **THE COURT:**  Right.

5      **UNIDENTIFIED SPEAKER:**  Within two days after that, you

6  will have learned counsel appointed and present in Court?

7      **THE COURT:**  That's my hope.  And it's more of a status

8  conference, with the hope that maybe we will have learned

9  counsel, okay?

10      **UNIDENTIFIED SPEAKER:**  Okay.

11      **THE COURT:**  So those who are not, I'm going to leave

12  it at that.  I'll update everybody as we go along, if I'm in a

13  position to do anything else.

14      **MR. COOPER:**  Thanks, Judge.

15      **THE COURT:**  All right.  Thank you.

16      **MR. FOTI:**  Thank you, Judge.

17      **MS. CHALBECK:**  Thank you, Judge.

18

19               (Proceedings concluded at 2:46 p.m.)

20                      *    *    *

21

22

23

24

25

"I certify that the foregoing is a correct transcript, to the best of my ability, from the record of proceedings in the above-entitled matter."


_s/ Bonnie S. Weber_            _February 12, 2024_
Signature                        Date

BONNIE S. WEBER, RPR

Official Court Reporter
United States District Court
Western District of New York