IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                    23-CR-99-LJV

SIMON GOGOLACK, et al.,

                  Defendants.

---

## GOVERNMENT'S MOTION FOR DEFENDANTS PETER GERACE, JR. AND JOHN THOMAS ERMIN'S FINANCIAL AFFIDAVITS

THE UNITED STATES OF AMERICA, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Louis A. Testani, Assistant United States Attorney, of counsel, hereby files its motion for Defendants Peter Gerace, Jr. and John Thomas Ermin's financial affidavits.

### I. Introduction

On January 31, 2024, the Court requested financial affidavits from Defendants Peter Gerace, Jr. and John Thomas Ermin so that the Court could make a determination as to whether learned counsel would be appointed for them. Defendant Gerace requested to submit the affidavit *ex parte*, to avoid the affidavit from becoming a "discovery tool" for the government. The government objected to the request. The Court permitted Defendants Gerace and Ermin to file the financial affidavits *ex parte* but allowed the government to submit a motion for access to the financial affidavits. The government's motion ensues.

## II.     Applicable Legal Standard

a.     The Criminal Justice Act

The Criminal Justice Act (CJA) was enacted by Congress "to effectuate the Sixth Amendment right to counsel '[i]n all criminal prosecutions.'" *United States v. Avenatti*, 550 F. Supp. 3d 36, 40 (S.D.N.Y. 2021) (Quoting U.S. CONST. AMEND. VI). The CJA "establishes the broad institutional framework for appointing counsel for a criminal defendant who is financially unable to obtain representation," *United States v. Parker*, 439 F.3d 81, 91 (2d Cir. 2006), including learned counsel "in every criminal action in which a defendant is charged with a crime which may be punishable by death," *see* Rule IV.B.1, W.D.N.Y. CRIM. JUSTICE ACT. POLICIES & PROCEDURES, (dated Sept. 2022) ("At the outset of any proceeding in which a financially eligible defendant is or may be charged with a crime punishable by death, a court must appoint two attorneys, at least one of whom is learned in the law applicable to capital cases."); *see also* 18 U.S.C. § 3599.

A Court may appoint counsel "if [it is] satisfied after appropriate inquiry that the [defendant] is financially unable to obtain counsel." *Id.* § 3006A(b). "It is the defendant's burden to establish financial eligibility." *Avenatti*, 550 F. Supp. 3d at 39 (quoting *United States v. O'Neil*, 118 F.3d 65, 74 (2d Cir. 1997)). "Courts have utilized a broad range of considerations in conducting an appropriate inquiry into financial eligibility under 18 U.S.C. § 3006A . . . . In many cases, the court's inquiry may properly be limited to review of financial information supplied on the standard form financial affidavit." *U.S. v. Parker*, 439 F.3d 91, 93 (2d Cir. 2006) (internal quotation marks and citation omitted); *see Avenatti*, 550 F. Supp. 3d at 39 ("The [CJA] itself does not prescribe what form the court's required 'inquiry' must take. In practice, however, it usually involves the defendant's submission of an affidavit

2

describing his or her financial circumstances.  To that end, the Administrative Office of the United States Courts has created a standard form for the purpose, commonly known as CJA Form 23").

b.  *Ex Parte* Communications

*Ex parte* communications are disfavored, particularly in the criminal context, and are "the exception rather than the rule, and they require particular justification." *United States v. Rechnitz*, 75 F.4th 131, 147 (2d Cir. 2023).  Such justifications include, when dealing with classified information under the Classified Information Procedure Act, to allow a court to make determinations regarding privilege, and to prevent compromising grand jury secrecy. *Id.* (collecting cases).  The Second Circuit has routinely held that the:

> [P]referred way to proceed in criminal cases is under the assumption that nothing is off the record . . . [because a] comprehensive record, particularly in a criminal case, is a paramount feature of fair proceedings.  A full record not only protects the rights of the parties and enables future proceedings . . . but also preserves and promotes transparency, a feature pivotal to public perception of the judiciary's legitimacy and independence.

*Id.* at 145–46 (internal quotation marks and citations omitted).

"Judicial documents are subject at common law to a potent and fundamental presumptive right of public access that predates even the U.S. Constitution." *Mirlis v. Greer*, 952 F.3d 51, 58 (2d Cir. 2020).  In addition, there a "stronger" right of access enshrined in the First Amendment. *Gannett Media Corp. v. United States*, No. 22-2160, 2022 WL 17818626, at *2 (2d Cir. Dec 20, 2022) (summary order).

With respect to the common law presumption, the Second Circuit has established a three-part test: 1) "a court must . . . conclude that the documents at issue are indeed 'judicial documents'"; 2) "must determine the weight of that presumption," based upon "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts"; and 3) "the court must balance competing considerations against" access, such as "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Coscarelli v. ESquared Hosp. LLC*, No. 18-CV-5943, 2020 WL 6802516, at *1 (S.D.N.Y. Nov. 19, 2020) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006)).  The burden falls on the party seeking to restrict access "to demonstrate that the interests favoring non-access outweigh those favoring access." *United States v. Amodeo*, 44 F.3d 141, 148 (2d Cir. 1995).

Further, a court must determine whether the First Amendment presumption of access attaches, which "gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption." *Lugosch*, 435 F.3d at 126.  To make that determination courts "consider (1) whether the filing at issue has 'historically been open to the press and general public' and (2) whether 'public access plays a significant positive role in the functioning of the particular process in question.'" *Avenatti*, 550 F. Supp. 3d at 45 (quoting *Press-Enter. v. Superior Ct. of Cal. for Riverside Co.*, 478 U.S. 1, 8 (1986)).  "A court should also ask whether the documents at issue are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.* (internal quotation marks and citations omitted).  If the First Amendment presumption of access attaches to a document, "continued sealing of the documents may be justified only with specific, on-the-record findings that

4

sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124 (citation omitted).

### III.  ARGUMENT

Defendants Gerace and Ermin's financial affidavits are subject to a right of public access under both the First Amendment and the common law and there are no interests in favor of non-access or "higher values" that warrant *ex parte* filing.

a. <u>The Common Law and First Amendment Presumption of Access Attaches to the Financial Affidavits</u>

As already noted, the common law presumption of access applies to "judicial documents." *See Avenatti*, 550 F. Supp. 3d at 46.  The Second Circuit has defined "judicial documents" for purposes of the common law presumption as documents "relevant to the performance of the judicial function and useful in the judicial process" meaning the document "would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019).  In determining whether the First Amendment presumption applies, a court considers "whether the filing at issue has historically been open to the press and general public"; "whether public access plays a significant positive role in the functioning of the particular process in question"; and "whether the documents at issue are derived from or are a necessary corollary of the capacity to attend the relevant proceedings."  *Avenatti*, 550 F. Supp. 3d at 45 (internal quotation marks and citations omitted).

5

Here, the common law presumption clearly applies, given that Defendants Gerace and Ermin's financial affidavits "reasonably have the *tendency* to influence [the Court's] ruling on a motion or in the exercise of its supervisory powers," *Brown*, 929 F.3d at 49, namely, whether the Court will appoint CJA learned counsel for these defendants, *see Avenatti*, 550 F. Supp. 3d at 46 ("CJA Form 23s generally — and, *a fortiori*, the Financial Affidavits specifically — fit comfortably within the Second Circuit's capacious definition [of judicial document]." (internal quotation marks and citation omitted); *United States v. Hadden*, No. 20-CR-468, 2020 WL 7640672, at *2 (S.D.N.Y. Dec. 23, 2020) (finding that the common law presumptive right of access applied, and rejecting a request to seal "financial statement[s] in support of [the defendant's] application to have CJA counsel or Federal Defenders appointed to represent him . . . because the documents [we]re both useful and relevant to the judicial process and the application for appointed counsel").

The First Amendment presumption of access also attaches to the financial affidavits. In *United States v. Suarez*, the Second Circuit held that the First Amendment right to access attached to CJA forms. 880 F.2d 626, 629–30 (2d Cir. 1989). The court in *Suarez* acknowledged that there *was not* a long tradition of accessibility to CJA forms but explained this by noting that "CJA itself is, in terms of tradition, a fairly recent development." *Id.* at 631. The court ultimately held that "[t]he lack of 'tradition' with respect to the CJA forms does not detract from the public's strong interest in how its funds are being spent in the administration of criminal justice and what amounts of public funds are paid to particular private attorneys or firms" and that "there [wa]s no persuasive reason to ignore the presumption of openness that applies to documents submitted in connection with a criminal proceeding." *Id.*; *see also Avenatti*, 550 F. Supp. 3d at 47 ("[I]f anything, there is a stronger

6

argument for granting First Amendment status to the CJA Form 23 and similar documents than there was for granting it to the [CJA] forms at issue in *Suarez*. Whereas the forms at issue in *Suarez* provided only 'barebones data' regarding 'who was paid, how much and for what services,' the CJA Form 23 plays a critical role in the determination of an applicant's substantive right to appointed counsel under both the CJA and the Sixth Amendment." (internal quotation marks and citation omitted)). Accordingly, both the common law and First Amendment presumption of access attach Defendant Gerace and Ermin's financial affidavits.

b. <u>There Are No Interests in Favor of Non-Access or "Higher Values" that Warrant *Ex Parte* Submission</u>

Even when the right of access under the common law and First Amendment attach to the document in question, the right is not absolute. *U.S. v. Sattar*, 471 F. Supp. 2d 380, 384 (S.D.N.Y. 2006) (citing *Nixon v. Warner Communications,* 435 U.S. 589, 597–98, (1978) and *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1 (1986)). With respect to the common law right of access, when attached to a document, the party seeking to restrict access bears the burden "to demonstrate that the interests favoring non-access outweigh those favoring access." *Amodeo*, 44 F.3d at 148. Regarding the First Amendment right of access, a "higher burden" applies to the party seeking to restrict access, who must show that restriction is required to "preserve higher values" and is narrowly tailored to that end. *Lugosch*, 435 F.3d at 124, 126 (citation omitted).

Here, the defendants cannot show that allowing Defendants Gerace and Emrin to submit their financial affidavits *ex parte* would "preserve higher values" and be narrowly

7

tailored to do so. The only justification offered by defense at the January 31, 2024, proceeding in support of their request to submit their affidavits *ex parte* was that they did not want the affidavits to be a "discovery tool" for the government. While the defendants did not elaborate further, presumably, the defendants do not want the government to have access to the information contained in their affidavits so that it cannot be used against the defendants by the government.

This precise reasoning was rejected by the Second Circuit in *Unites States v. Harris*, 707 F.2d 653 (2d Cir. 1983). In *Harris*, the government challenged the defendant's eligibility for appointed counsel. *Id.* at 655. The court then "attempted to conduct further inquiry into [the defendant's] financial situation, but was unable to do so because of [the defendant's] refusal to proceed further unless the proceeding was conducted *in camera* and without the government's participation." *Id.* at 622. The Second Circuit held that rejecting the defendant's request to provide evidence of his financial inability to retain counsel *ex parte* did not constitute error, and "that the speculative possibility of inadequate protection of defendant's fifth amendment rights is outweighed by the need to determine facts through adversarial proceedings." *Id.* at 663; *see United States v. Kolfage*, 537 F. Supp. 3d 559 (S.D.N.Y. May 5, 2021) ("[C]ourts in this circuit have almost uniformly denied requests to file a CJA affidavit *ex parte*, including where the defendants were charged with fraud."); *United States v. Coniam*, 574 F. Supp. 615, 617 n.2 (D. Conn. 1983) ("The CJA does not mandate nor seemingly contemplate a closed presentation of financial information. Ex parte proceedings are not consistent with traditional adversarial proceedings . . . .The conflict between the Fifth and Sixth Amendments is not unreconcilable."); *United States v. Hilsen*, No. 03 CR.919, 2004

WL 2284388, at *8, 11 (S.D.N.Y. Oct. 12, 2004) (denying motion for leave to submit a CJA Form 23 *ex parte* and citing *Harris* and its progeny).

Even under the lesser common law burden, the defendant cannot show "that the interests favoring non-access outweigh those favoring access." *Amodeo*, 44 F.3d at 148. There are a host of interests favoring access here. The right to access to the financial affidavits "ensures that the public may see [a defendant] is fairly dealt with and not unjustly denied an important substantive right"; "helps ensure that judge and prosecutor carry out their duties responsibly"; "discourages perjury"; and allows the government to exercise "its right to be heard on the question of whether a defendant is eligible for appointment of counsel pursuant to the CJA." *Avenatti*, 550 F. Supp. 3d at 47, 53–54 (internal quotation marks and citation omitted); *see United States v. Jenkins*, No. 5:11-CR-602, 2012 WL 12952829, at *3 n.1 (N.D.N.Y. Oct. 9, 2012) ("[T]he government always has the right, and indeed is charged with the responsibility, of bringing to the Court's attention any possible misuse or waste of public funds.") (internal quotation marks omitted); *United States v. Herbawi,* 913 F. Supp. 170, 173 (W.D.N.Y. 1996) ("[T]he government is entitled to be heard" on the issue of a defendant's eligibility for assigned counsel).

In fact, CJA Form 23 explicitly requires the affiant to "certify under penalty of perjury that the foregoing is true and accurate." *See* CJA-23 (Rev 3/21). That provision would have no meaning at all if the form was not accessible to the public or government. Such interests outweigh the defendant's interest in preventing the government from accessing or using the information contained therein. *Avenatti*, 550 F. Supp. 3d at 54 ("It follows that [the defendant's] Fifth Amendment interests are not sufficiently weighty countervailing factors to

override the common law presumption in favor of public access. Nor do they make sealing necessary to preserve higher values.") (internal quotation marks and citations omitted).

Accordingly, the court should grant the government's motion for access to Defendant Gerace and Ermin's financial affidavits.

## CONCLUSION

For the reasons set forth above, the government respectfully moves for the production of defendant Peter Gerace and John Ermin's financial affidavits.

DATED: Buffalo, New York, February 20, 2024.

                            TRINI E. ROSS
                            United States Attorney

BY:   s/LOUIS A. TESTANI
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, NY  14202
        716/843-5894
        Louis.Testani@usdoj.gov